BARKWORTH *v.* PALMER.[1]

FRAUDULENT CONVEYANCES — EVIDENCE — INTENT — SUBSEQUENT CREDITORS.

    The existence of an actual fraudulent intent at the time a conveyance is made is necessary to be established in order to set the conveyance aside as in fraud of subsequent creditors.

Appeal from Jackson; Peck, J. Submitted June 14, 1898. Decided July 18, 1898.

Creditors' bill by Thomas E. Barkworth and Charles A. Blair, copartners, against William H. Palmer and Mary M. Palmer. From a decree for complainants, defendants appeal. Reversed.

---

[1] Rehearing denied October 3, 1898.

*Thomas E. Barkworth* and *Charles A. Blair, in pro. per.*

*Forrest C. Badgley* (*Richard Price*, of counsel), for defendants.

LONG, J.   Complainants recovered a judgment against defendant William H. Palmer on March 30, 1895, for $226.10, and $20.50 costs.   This proceeding is a judgment creditors' bill to set aside certain deeds of conveyance made by Palmer to his wife, Mary M. Palmer.   The case was heard in open court, and a decree made in favor of complainants, from which defendants appeal.   The court filed a written opinion in the case, which sets out the facts upon which that court acted, as follows:

" For several years prior to July 22, 1893, the defendant William H. Palmer had contested in the courts the proposed will of his mother, Rebecca Palmer.   In this contest and the legal controversies arising out of it, the complainant Thomas E. Barkworth had been one of his attorneys.   The complainant Charles A. Blair had also acted for him as attorney in some of the litigation arising out of the settlement of his mother's estate.   During the latter part of this time, and afterwards, the complainants were in partnership, as Barkworth & Blair.   July 22, 1893, William H. Palmer and his sister, Annis Campbell (who was the proponent of the contested will), agreed upon a settlement of all questions growing out of the will and of their mother's estate.   One of the considerations of this settlement was that Mrs. Campbell give her brother, William H. Palmer, her note for $4,000, secured by real-estate mortgage.

"August 7, 1893, William H. Palmer owned real estate in the county of Jackson of the value of at least $17,000, and also had the note of $4,000 against his sister, Mrs. Campbell.   At that time his indebtedness, actual or claimed, was as follows:   To Barkworth & Blair, $736; to Williamson, a lumber dealer, a small amount not precisely shown by the evidence; to William R. Brown, a small amount not precisely shown by the evidence; to Thomas I. Daniel, $80.35; to Amon Stephens, $7,000; to Gale Raymond, $800.   All these debts and claims were based upon contract.   William H. Palmer admitted as correct the in-

debtedness to Barkworth & Blair, Williamson, and Brown, but disputed the claims of Daniel, Stephens, and Raymond. July 26, 1893, Stephens brought suit for his claim in the circuit court for the county of Jackson, claiming $12,000 damages, and on the same day sued out a writ of garnishment. In his affidavit for garnishment, he swore the defendant William H. Palmer owed him $7,000. July 29, 1893, Raymond began suit against Palmer, claiming $2,000 damages, and in the affidavit for garnishment sued out on that day swore that the defendant owed him $800. The summons in the Stephens case was served on Palmer July 26, 1893, and in the Raymond case on July 31, 1893.

"This was in brief the situation on August 7, 1893, when the defendant William H. Palmer made the conveyances of his real estate which are assailed by the bill in this case as fraudulent. It is plainly apparent that if we assume that the note of $4,000 against Mrs. Campbell was an asset available to creditors at its face (of which there are grave practical doubts), and the claims of Daniel, Stephens, and Raymond should be established at the amounts claimed, or any sum approaching it, creditors could collect their debts only by recourse to the real estate. If his real estate should be placed beyond the reach of creditors, and the aggregate of their claims should finally be fixed at a sum in excess of what might be realized out of the $4,000 note, the creditors would be powerless to collect such excess. The conveyances in question were made August 7, 1893. By them the defendant William H. Palmer deeded all his real estate, of the value of at least $17,000, to Harriet L. Johnson (a mere intermediary); the defendant Mary M. Palmer at the same time deeding all of her real estate, worth about $2,500, to the said Johnson; and said Johnson, by previous understanding of all the parties, deeded all the lands conveyed to her by both deeds to the defendants, William H. Palmer and Mary M. Palmer, jointly, as husband and wife. Neither of these conveyances was recorded until July 10, 1894.

"In August, 1893, William H. Palmer paid Barkworth & Blair's debt of $736. He has also since that time paid the debts of Williamson and William R. Brown. In the following fall he settled the claims of Stephens and Raymond, paying each $100. Daniel's debt has not been paid. He sued Palmer a year or more later in justice's court, and recovered a judgment for the face of his claim, filed a transcript of his judgment in the circuit court, and

has levied execution upon the lands in question. The debt which is the basis of complainants' judgment and execution in this case arose between August 29, 1893, and May 23, 1894, which are the dates of the first and last items of their account.    It will be observed that this was after the date of the deeds attacked as fraudulent, but before they were recorded.   There is no doubt that both complainants gave credit to Palmer in the faith and belief that he still owned all the lands in question, and without any knowledge or notice of the conveyances assailed.

" The question is:   Are the deeds of August 7, 1893, from William H. Palmer to Harriet L. Johnson, and from Harriet L. Johnson to the defendants, as husband and wife (so far as covers the lands deeded to her by William H. Palmer), fraudulent and void as to the complainants ? The defendants insist that they are not, for the following reasons:

" (1) Defendants contend that the complainants stand in the position of subsequent, and not as existing, creditors, and, therefore, that these conveyances cannot be held fraudulent as to them without proof of actual intent to defraud.    It is true that complainants' debt arose after the conveyances were executed, but it arose before they were recorded, and before complainants had any knowledge or notice of their existence; and the credit was extended by the complainants in good faith, relying upon the supposed fact that the defendant Palmer was still the owner of the real estate conveyed.   Under such circumstances, the rule is that if the conveyance in fact operated to defeat their claim, and that was its natural result, as was the case here, it is, in law, fraudulent, without proof of any actual intent to defraud.   It is therefore unnecessary to determine whether Palmer, when he executed the conveyances in question, actually intended to defraud his creditors, either existing or subsequent.

" (2) The defendants claim that these conveyances cannot be attacked as fraudulent, because they were made for a valuable consideration, the defendant Mary M. Palmer having in good faith, in consideration of William H. Palmer having deeded his lands, conveyed her own, of the value of $2,500, in the same manner.   I am satisfied that this contention, as applied to the facts in this case, is incorrect, and that the fact of Mrs. Palmer having, as a part of the arrangement, placed the title of her own real estate in the same situation, affords no objection to the complainants' relief.

"(3) It is also urged that the conveyances in question were not fraudulent, because defendant William H. Palmer retained in his hands sufficient property to pay in full all existing and contemplated creditors. As above stated, it cannot be said that Palmer retained in his hands sufficient property to pay in full all his debts. Whether the $4,000 note which he kept would have been sufficient depended upon the amount which the debts might afterwards be determined to be. The amount claimed against him was much more than $4,000. It is true that, as the amounts were afterwards fixed by settlement and judgment, their aggregate was less than $4,000. But this, I think, is not the proper test. To bring his case within this rule, Palmer must have kept in his hands for creditors enough of his assets to pay their debts at the full amount of the claims. He could not lawfully reduce his property by voluntary conveyance to an amount fixed by himself, but less than the face of their claims, and so put himself in a situation to say: 'If your debts are established at an amount less than the value of the property I have saved for you, you can collect; but, if they are fixed at a sum greater than that, you cannot collect the excess.' Neither was it safe to assume that the $4,000 note against his sister, which he retained, would be as readily available to creditors as the real estate which he conveyed. The facility with which he might manipulate such an asset to hinder, delay, or defraud creditors whose claims he thought unjust is much greater than that with which he could have prevented their claims from being collected from the real estate which he could by these conveyances put beyond their reach. Indeed, it is not surprising that although he retained the $4,000 note in his hands, and the aggregate of his debts was finally fixed at much less than $4,000, Mr. Daniel, whose claim he disputed, has been unable to collect his debt by execution without recourse to the real estate conveyed. By these conveyances, if they are valid, Palmer has actually put himself in a position where an existing creditor, whose debt he was unwilling to pay, could not collect it by law. It must therefore be held that these conveyances are not safe from attack as fraudulent for the reason that, when they were executed, Dr. Palmer retained in his hands sufficient property to pay all his debts.

"(4) It is urged by defendants that the delay in recording the conveyances from August 7, 1893, when they were executed, until July 10, 1894, when they were recorded, was not a fraudulent act, and occurred because the taxes

had not been paid, and in fact an attempt was made to record them promptly. Assuming this to be true, the legal situation is not changed. They were in fact not recorded until July 10, 1894. Complainants had no knowledge of their existence, and in good faith gave the defendant Palmer credit for the services which are the basis of their judgment in this case, in reliance upon the supposed fact that he still owned his real estate, and had not put it beyond the reach of creditors.

" (5) Defendants' counsel claim (on brief) that neither Daniel, Stephens, nor Raymond were, on August 7, 1893, creditors of William H. Palmer, so as to be entitled to the benefit of our statute as to fraudulent conveyances of real estate, for the reason that their claims were disputed claims for damages. This is a misconception. The principle invoked is not applicable to a case like this, where all the debts and claims in question were based upon contract, and the only question as to any of them was whether they existed at all, and, if so, their amount.

" The result reached is that complainants are entitled to the relief prayed for in their bill, with costs; and decree to that effect, with appropriate formal parts, may be prepared and presented for settlement."

We think the court below was in error in its conclusion. That court was unable to find from the evidence that there was any actual intent to defraud the complainants, who were subsequent creditors; or, at least, the court did not find any such actual intent, but placed its finding in favor of complainants upon the ground that the credit was extended by complainants in good faith, relying upon the supposed fact that defendant William H. Palmer was still the owner of the real estate conveyed; and that court said: "It is therefore unnecessary to determine whether Palmer, when he executed the conveyances in question, actually intended to defraud his creditors, either existing or subsequent." This is not the rule in this State. In *Cole* v. *Brown*, 114 Mich. 396, 400, the rule is laid down, after a careful consideration of the cases in this and other States, that—

"While no fraudulent intent is necessary to set aside voluntary conveyances as to existing creditors, it must be

established in order to set them aside as to subsequent creditors. In other words, actual fraud must be shown, and, as well, the specific intent to defraud the individual subsequent creditor complaining, or subsequent creditors generally."

See, also, *Michigan Trust Co.* v. *Adams*, 109 Mich. 181; *Wooden* v. *Wooden*, 72 Mich. 353; *Campbell* v. *Remaly*, 112 Mich. 214.

We have carefully examined the evidence in the case, and are of the opinion that it cannot be said from it that the defendants intended, when they made these deeds, to defraud the complainants, or any subsequent creditor. In order for the complainants to recover in this case, they should have shown that, at the time when these deeds were made, there was an express design on the part of the defendants to subsequently obtain credit from the complainants, and defraud them. No such showing is made, and the decree cannot be upheld.

The decree must be reversed, and a decree entered in this court dismissing complainants' bill, with costs of both courts.

The other Justices concurred.